UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-53-GWU

| | |
|---|---|
| VERNA H. SHACKLEFORD, | PLAINTIFF, |
| VS.        **MEMORANDUM OPINION** | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | DEFENDANT. |

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB).  The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

    4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

    7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

07-53 Verna H. Shackleford

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

07-53  Verna H. Shackleford

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

      However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Verna Shackleford, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments consisting of discogenic and degenerative disorders of the lumbar spine, a history of kidney stones, a history of rosacea, a mild to moderate depressive disorder, and borderline intellectual functioning. (Tr. 17). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Shackleford retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 23-6). The Appeals Council declined to review, and this action followed.

At the first of two administrative hearings, the ALJ asked the VE whether an individual such as the plaintiff could perform any jobs if she were restricted to the "medium" exertional level, could perform no climbing of ladders and needed to avoid hazards. (Tr. 401). The VE responded that such a person could return to the plaintiff's past relevant work as the owner of a pet shop. (Id.). The ALJ also identified a number of jobs which such a person could perform at the "light" exertional level. (Tr. 401-2). At a subsequent hearing, the ALJ added the following psychological restrictions: (1) a "seriously limited but not precluded" ability to deal with the public and understand, remember, and carry out complex job instructions;

7

07-53 Verna H. Shackleford

and (2) a "limited but satisfactory" ability to use judgment, deal with work stresses, demonstrate reliability, relate predictably in social situations, behave in an emotionally stable manner, understand, remember, and carry out detailed job instructions, and maintain attention and concentration. (Tr. 413). The VE responded that there were medium level jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 414-15).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

While the psychological hypothetical factors are consistent with the opinion of Consultative Mental Status Examiner Gary Maryman (Tr. 307-8), and there are no other examining or non-examining sources who clearly provide greater limitations, the same cannot be said of the physical restrictions.

The physical restrictions chosen by the ALJ are identical to those given by state agency non-examining physicians John Rawlings and H. T. Anzures in 2002 (Tr. 245-51, 254-60), more than two years before the ALJ's January, 2005 decision. The only opinion regarding her functional capacity from an examining source at that time was contained in the report of Dr. Michael Dobbs, a source who had seen the plaintiff on one occasion in March, 2002. (Tr. 219). The plaintiff had described a number of problems, including fibromyalgia, a ruptured disc, an enlarged kidney,


restless leg syndrome, and mitral valve prolapse. (Id.). Dr. Dobbs reviewed an x-ray of the lumbar spine which showed narrowing of the disc space at two levels, and on physical examination noted a reduced range of motion and tenderness of the lumbar spine, and decreased sensation to pinprick in the left arm and leg. (Tr. 221). In conclusion, Dr. Dobbs stated that his findings were consistent with a diagnosis of fibromyalgia, although it was debatable whether fibromyalgia actually existed as a diagnosis, and also thought that it was possible the plaintiff had "a ruptured lumbar disc or two," although the current examination was not highly suggestive of radiculopathy. (Id.). In terms of functional restrictions, he merely stated that the plaintiff's ability to sit, stand, and move about and travel were impaired to an unspecified degree because of pain. (Tr. 222).

Subsequently, the plaintiff was seen on two occasions by a neurosurgeon, Dr. William Brooks, on referral from her family physician. (Tr. 278). He also found a limitation of range of motion, and obtained an MRI of the lumbar spine showing a focal herniation at L4-5 compressing the dural sac, and another herniation at L5-S1 compressing the nerve root. (Tr. 264). It was additionally noted that there were "somewhat heavy degenerative changes." (Id.). On the same date, an EMG/NCV was obtained, and while the NCV was essentially normal, the EMG of the right leg was abnormal and suggestive of right L5 and S1 radiculopathy. (Tr. 263). Dr. Brooks noted on the plaintiff's next visit that she had advanced degenerative disc disease that accounted for her symptomology, and added that she had multiple

07-53 Verna H. Shackleford

symptomology consistent with a diagnosis of fibromyalgia. (Tr. 278). He felt, however, that the benefits of surgery would not be worth the risk, and advised Mrs. Shackleford to obtain epidural steroid injections. (Tr. 277). He then wrote a letter dated three days later stating that he had reviewed Mrs. Shackleford's records and believed she was "disabled." Several months later, in September, 2003, in response to an inquiry from the plaintiff's attorney, Dr. Brooks repeated his findings and opined that the plaintiff would be unable to work for 12 consecutive months. (Tr. 332).

The plaintiff began treatment with a new family practitioner, Dr. Gregory Dye, in 2003. He also described neuropathy (Tr. 273), and made findings of back tenderness and weak right quadriceps (Tr. 275). He included fibromyalgia and restless leg syndrome in his diagnoses, and listed these items on a "chronic problem list." (Tr. 348). Dr. Dye prescribed a fairly long list of medications, including narcotic pain relievers and muscle relaxers. (Tr. 349).

On December 1, 2004, shortly after the most recent administrative hearing, Dr. Dye submitted a physical medical assessment form indicating that due to the plaintiff's herniated disc as shown on the MRI, she was incapable of lifting more than five to ten pounds occasionally and less than one pound frequently. (Tr. 379). She could stand and walk three to four hours in an eight-hour day (no more than one hour without interruption), sit three to four hours (no more than one hour without interruption), never climb, stoop, balance, or crawl, occasionally kneel or crouch,

and had restrictions on pushing and pulling as well as a need to avoid heights and temperature extremes.

Although the opinion of a non-examining physician may be accepted over an examiner if the non-examiner has access to the entire record and clearly stated the reasons for his difference of opinion, Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994), that is not the case here. The state agency sources lacked access to some of the most significant evidence in the case, the MRI and EMG findings. While the ALJ was not required to give controlling weight to the conclusory opinion of disability by Dr. Brooks, the opinion of this specialist along with the highly restrictive medical assessment by Dr. Dye should have been a red flag regarding the reliability of the now outdated opinions of the state agency sources.[1]  Dr. Dye did give specific restrictions, which the ALJ rejected as being inconsistent with the rest of the medical evidence, but the ALJ mistakenly believed that the EMG/NCV testing was normal. (Tr. 18). She also described the MRI as showing "diffuse discogenic and degenerative changes throughout the lumbar spine" (Id.), making no mention of the two disc herniations. Moreover, although Dr. Dye's reports are not extremely detailed, they did describe neuropathy and positive findings, as described earlier,

---

[1] It is not entirely clear that the state agency opinions were compatible with the limitations suggested by Dr. Dobbs, the consultative examiner, who placed unspecified sitting and standing restrictions on Mrs. Shackleford due to pain. The state agency reviewers did not put any special restrictions on the plaintiff's ability to sit or stand, although their opinions would not have required her to do either for more than approximately six hours in an eight-hour day.

07-53  Verna H. Shackleford

and his medical report was explicitly based on the MRI findings.  Therefore, while the evidence may be insufficient in its present state to award benefits, at the minimum a remand will be required for additional vocational testimony based on the report of Dr. Dye or a medical advisor who has had access to the entire record.

The plaintiff asserts on appeal that it was error for the ALJ to find that fibromyalgia was a non-severe impairment.  As noted, both Dr. Dobbs and Dr. Brooks opined that the plaintiff's symptomology was consistent with fibromyalgia. Ultimately, however, no source appeared to identify any limitations explicitly related to this problem, so any error is harmless.

The decision will be remanded for further consideration.

This the 16th day of July, 2008.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**